In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-1423

TAMARA WATSON,

*Plaintiff-Appellant,*

*v.*

LITHONIA LIGHTING AND
NATIONAL SERVICE INDUSTRIES, INC.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. IP 00-1744-C-M/S—**Larry J. McKinney**, *Chief Judge.*

ARGUED SEPTEMBER 6, 2002—DECIDED SEPTEMBER 20, 2002

Before POSNER, EASTERBROOK, and DIANE P. WOOD,
*Circuit Judges.*

EASTERBROOK, *Circuit Judge.* In July 1997 Tamara
Watson went to work on the assembly lines of Lithonia
Lighting in Crawfordsville, Indiana. Ten months later she
suffered a shoulder injury that restricted her ability to
perform the repetitive motions characteristic of assembly-
line work. Lithonia assigned Watson a series of tasks that
she remained able to complete. In June 1999 Watson's
physician informed Lithonia that she would never again
be able to perform any tasks that require repetitive mo-
tion of her upper right arm. Lithonia, which says that it

requires all assembly-line workers to rotate through all positions (the better to avoid repetitive-stress injuries), concluded that it had no manual jobs available for someone with Watson's limitations, and it let her go. She sued under the Americans with Disabilities Act, contending that Lithonia should have given her as an accommodation on a permanent basis the sort of positions she held between May 1998 and June 1999.† The district court granted summary judgment in Lithonia's favor, ruling that it need not create a new position suited to her physical restrictions. 2002 U.S. Dist. LEXIS 4361 (S.D. Ind. Jan. 14, 2002). That was a sound ruling. Even if Watson is "disabled" as the ADA uses that word in 42 U.S.C. §12102(2)(A)—a doubtful proposition given the view that *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002), took of repetitive-motion injuries— she was entitled only to a "reasonable" accommodation, and we have held that it is not "reasonable" to require an em-

---

† The complaint named as defendants Lithonia Lighting and its corporate parent National Service Industries, Inc. Watson does not explain on what basis a parent corporation could be held liable, though National Service makes nothing of this. And it is not clear that any entity known as "Lithonia Lighting" exists today—or ever did. Lithonia Lighting appears to be a trade name for a line of products, not the name of any corporation. Cf. *Schiavone v. Fortune*, 477 U.S. 21 (1986). According to Lithonia's web site, its corporate name is Acuity Lighting Group, Inc., and it is no longer National Service's subsidiary (having been spun off in November 2001 as a subsidiary of a newly formed Acuity Brands, Inc.). Yet the Rule 26.1 disclosure statement of defendants' brief, filed in May 2002, asserts that a "Lithonia Lighting" is a wholly owned subsidiary of National Service Industries. If it is or was a subsidiary, however, it must be a corporation, yet "Lithonia Lighting" does not include a corporate identifier (though "Acuity Lighting Group, Inc." does). We use "Lithonia Lighting" in the text without making further attempts to determine the identity and ownership of Watson's former employer.

ployer to create new jobs tailored to each employee's abilities. See, e.g., *Mays v. Principi*, No. 01-4227 (7th Cir. Sept. 5, 2002); *Hansen v. Henderson*, 233 F.3d 521, 523-24 (7th Cir. 2000).

Watson concedes that, if all manual workers indeed rotate through all positions on Lithonia's assembly line, then it offers no jobs that she can perform, so that she is not "otherwise qualified". See 42 U.S.C. §12112(b)(5)(A). See also, e.g., *Miller v. Illinois Department of Corrections*, 107 F.3d 483, 485 (7th Cir. 1997). Moreover, Watson admits that rotation is Lithonia's norm and serves a business purpose; it is not a scheme cooked up to avoid obligations under the ADA. Rotation not only reduces the risk of injury caused by long-term repetition of particular motions but also, by qualifying every worker to perform each task on the line, facilitates production by making it easier for the firm to substitute among workers when some go on vacation or fail to appear without warning. Nonetheless, Watson contends that Lithonia makes exceptions to rotation—and if it makes exceptions for other employees, Watson insists, then it must accommodate her by making another.

One aspect of this contention appears in an affidavit that Watson filed. According to this affidavit, two employees have been allowed to do a subset of all assembly-line tasks rather than rotate through all of them. The difficulty with this submission is that Watson does not explain how she learned this or offer evidence from anyone with personal knowledge (such as one of the employees in question or a supervisor who assigns employees to tasks). Yet Fed. R. Civ. P. 56(e) provides: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Affidavits offered in support of or opposition to summary judgment create an

issue of fact only to the extent that they provide evidence that would be admissible if offered live on the witness stand. See *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). Watson's affidavit was not based on personal knowledge and did not imply the availability of any admissible evidence. That leaves Lithonia's evidence uncontested.

There remains the possibility that Lithonia has non-rotating positions or slots that always are filled, though by a changing cast of characters. An employer might establish a pool of light-duty positions (or other subsets of the full tasks) suited to employees recovering from injuries. See *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 696 (7th Cir. 1998). Lithonia provided such an accommodation to Watson so that she could continue working after her injury. This benefits not only the employee (by providing income and helping to keep skills honed) but also the employer, which can have experienced workers available for reassignment once they recover. This is exactly what the ADA encourages. Watson contends that, if an employer goes this far, it must allow an injured employee to occupy the light-duty (or limited-task) position indefinitely. Yet this would be bad news for the rest of the labor force. If an employer set aside, say, five positions for use by assembly-line workers recovering from repetitive-motion stress, on Watson's view the first five to occupy these positions would be entitled to keep them indefinitely. That would close the positions to other workers who might have been able to use them during recovery—and it would increase the frequency of repetitive-motion injuries in the workplace. For if the employer must station five workers at positions that do not require particular motions (such as movements of the upper right arm), other assembly line workers will be forced to spend a greater portion of their time in those positions and will be more exposed to repetitive-motion in-

jury as a consequence. If injured workers occupy the five restricted-duty positions only temporarily, during recovery, this can be avoided: a given employee might be held off a line that requires the use of air guns (and thus the right shoulder) for a time, but her successor may be able to use air guns while refraining from connecting wires. Because the set of tasks allocated to the recovery positions would change with the occupants, an employer could maintain a rotation system for the workplace as a whole. Once the positions are permanently assigned, however, the rotation system is foiled and its benefits lost. Watson's position, if adopted, thus would simultaneously increase the incidence of workplace injury and diminish the employer's ability to accommodate employees who have transient conditions.

We conclude that the ADA does not require an employer that sets aside a pool of positions for recovering employees to make those positions available indefinitely to an employee whose recovery has run its course without restoring that worker to her original healthy state. A person is "otherwise qualified" within the meaning of the ADA only if she can perform one of the regular jobs (with or without an accommodation). Watson cannot perform any assembly-line job at Lithonia; what she wants is a different job, comprising a subset of the assembly-line tasks, rather than an accommodation in the performance of one of Lithonia's existing assembly-line jobs (all of which entail all tasks). Because the ADA does not require employers to create new positions, the judgment of the district court is

AFFIRMED.

A true Copy:

      Teste:

                  _____
                  *Clerk of the United States Court of*
                  *Appeals for the Seventh Circuit*