[No. B180615. Second Dist., Div. Seven. Jan. 25, 2006.]

MARK A. RAINE, Plaintiff and Appellant, v.
CITY OF BURBANK et al., Defendants and Respondents.

**COUNSEL**

Shegerian & Associates, Inc., Carney R. Shegerian and Donald Conway for Plaintiff and Appellant.

Dennis Barlow, City Attorney, and Carol A. Humiston, Assistant City Attorney, for Defendants and Respondents.

**OPINION**

**PERLUSS, P. J.**—Does an employer who reassigns an employee to a temporary light-duty position to accommodate the employee's injury have an affirmative obligation under the Fair Employment and Housing Act,

Government Code section 12900 et seq.[1] (FEHA), to make that temporary light-duty assignment available indefinitely once the employee's temporary disability becomes permanent? In addressing a similar question under the Americans with Disabilities Act of 1990 (42 U.S.C. 12101 et seq.; ADA), the federal circuit courts of appeals have uniformly held the duty to provide reasonable accommodation for a disabled employee does not obligate the employer to convert a temporary light-duty position into a permanent one when doing so would, in effect, create a new position. We agree with the reasoning expressed in those cases and hold the answer is no different under the accommodation requirements of FEHA. Accordingly, we affirm the judgment entered following the trial court's grant of summary judgment in this FEHA action for disability discrimination and failure to accommodate on the ground the permanent accommodation sought by the employee in this action was unreasonable as a matter of law.

## FACTUAL AND PROCEDURAL HISTORY

### 1. Raine's Employment as a Patrol Officer

Mark A. Raine, now 48 years old, was employed as a police officer for the Burbank Police Department (BPD) for 21 years, from May 11, 1981 through May 22, 2002. From 1981 through 1995 Rained worked as a uniform patrol officer. On September 11, 1995 he was assigned to work as a school resource officer for the Burbank Unified School District. The position required Raine to patrol school campuses when school was in session and to work as a street patrol officer when school was not in session.

### 2. Raine's Injury, Temporary Reassignment and Involuntary Retirement

On September 18, 1995 Raine suffered a torn meniscus while on duty. Following the injury to his knee, Raine had difficulty running, jumping, kneeling and lifting, activities Raine concedes are essential to perform the duties of a patrol officer and school resource officer. In 1995 BPD reassigned Raine to a temporary light-duty position at BPD's front desk to accommodate him while his injury healed. Raine remained in that position for six years, until 2002, when BPD was advised by Raine's personal physician that Raine's disability was permanent and he would never be able to perform the essential functions of a patrol officer.

### 3. Raine's FEHA Complaint

After being advised of Raine's permanent disability BPD arranged a job analysis, with input from Raine and his immediate supervisor, as part of the

---

[1] Statutory references are to the Government Code unless otherwise indicated.

interactive process mandated by FEHA "to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." (§ 12940, subd. (n).) BPD told Raine it had no available position for a sworn police officer with Raine's qualifications and physical limitations. Raine took disability retirement and, after exhausting his administrative remedies and obtaining a right to sue letter from the Department of Fair Employment and Housing, filed suit against BPD, the City of Burbank and three senior officials from the city and police department (collectively the City) alleging disability discrimination, failure to accommodate, age discrimination, retaliation and harassment, all in violation of FEHA, in connection with his removal from the front-desk position and his involuntary retirement from BPD.

### 4. The City's Motion for Summary Judgment

The City moved for summary judgment or in the alternative summary adjudication. In its motion the City provided evidence the front-desk position at BPD is permanently staffed by civilians, called "police technicians," who are paid substantially less and provided fewer benefits than sworn police officers. The front-desk position is also reserved as a temporary light-duty assignment for police officers recovering from injuries. Noninjured police officers also fill in temporarily at the front desk when a police technician is unavailable or unable to complete a particular report.

According to the City, BPD accommodated Raine's disability by reassigning him temporarily to the front-desk position while he recovered from his injuries. BPD continued to accommodate Raine in that light-duty position for six years, including providing him with two years' time off while he recovered from various medical procedures, hopeful that, at some point, he could return to his duties as a patrol officer. When advised by Raine's physician in 2002 that Raine's injuries would not get better and that Raine would never be able to perform the job functions essential to a patrol officer, the City advised Raine it could not permanently accommodate him at the front desk without changing his status from police officer to police technician.

According to declarations of Thomas Hoefel, BPD's chief of police, John Nicoll, the City's management services director at the time Raine retired, and Darin Ryburn, president of the Burbank Police Officers Association, there was no vacant permanent position for a sworn police officer with Raine's qualifications at the time BPD was informed Raine's condition would not improve. Although BPD could accommodate Raine by placing him in the civilian position of police technician, thereby allowing him to remain at the front desk until his scheduled retirement, Raine made clear to Hoefel, Nicoll and Ryburn

he was not interested in a civilian position, principally because he would forfeit his police retirement benefits if he continued to be employed by the City of Burbank or BPD after he took disability retirement.[2]

Hoefel's declaration confirmed BPD had accommodated another officer in the past whose injuries had become permanent by reassigning him to a position as facilities manager, but Hoefel testified there was no position available in the department to accommodate Raine other than the civilian position of front-desk technician. Hoefel also testified the decision to retire Raine was directly related to BPD's lack of available officer positions to accommodate Raine's disability. It had nothing to do with Raine's performance at the front desk or with Raine's age; several officers on active duty with BPD were older than Raine.

### 5. *Raine's Opposition to the Motion*

In his opposition to the City's motion Raine provided evidence he was physically capable of performing all of the essential functions of the front-desk position and his performance reviews while in that position were satisfactory to above average. In addition, in his declaration supporting his opposition to the motion, Raine testified police officers frequently worked alongside civilians at the front desk. Raine, however, did not indicate whether the officers who worked at the front desk were temporarily disabled or whether their assignments to that position were temporary or permanent. Raine also testified he was often told by fellow police officers they preferred to have a police officer working the front desk: Civilians do not have the training to prepare certain types of reports, cannot make arrests and cannot carry a weapon (and thus cannot protect any individuals near the front desk).

Raine also submitted the deposition testimony of Ryburn, who testified police officers worked at the front desk. However, Ryburn explained the officers who worked at the front desk were either recovering from injuries or were filling in temporarily for a civilian front-desk technician when the technician lacked the training or was otherwise unavailable to take a report; in the latter case the officer would return to his or her patrol duties after completing the report.

---

[2] In a letter to BPD as part of the interactive process, Raine asked to be considered for three positions, none of which involved front-desk work: (1) field evidence laboratory technician, (2) detective and (3) officer in the property evidence room. The motion for summary judgment or summary adjudication included evidence Raine was either unqualified or unable to perform the essential functions for each of those positions. Neither Raine's opposition to the motion nor his appeal from the judgment argues Raine was qualified for any of those positions. Rather, Raine argues on appeal, as he did in the trial court, he was qualified to perform the essential functions of the front-desk position.

Finally, Raine testified he had been told by Nicoll that BPD, as a practice, did not accommodate persons whose disabilities had become permanent. Jeniffer Bentson Gebel, a consultant hired by the City to advise it on compliance with state and federal disability laws, testified Nicoll had told her BPD lacked any permanent positions for sworn officers who become permanently disabled.

### 6. *The Trial Court's Summary Judgment Order*

The trial court granted summary judgment for the City, concluding Raine was not a qualified person with a disability under FEHA because he was unable to perform the essential job functions of a sworn patrol officer with or without reasonable accommodation; it was unreasonable to require the City to permanently place Raine at the front desk, a permanent position reserved for civilian personnel, without altering Raine's police officer status and salary; and there was no evidence of disability discrimination, age discrimination or retaliation.

## CONTENTIONS

Raine contends triable issues of fact exist as to whether a permanent assignment to the front-desk position was a reasonable accommodation. Raine does not challenge the trial court's findings with respect to his claims for age discrimination, retaliation and harassment.

## DISCUSSION

### 1. *Standard of Review*

We review the trial court's grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348 [1 Cal.Rptr.3d 32, 71 P.3d 296]; Code Civ. Proc., § 437c, subd. (c).)

### 2. *FEHA's Accommodation Requirements*

■ The California Fair Employment Practice Act (former Lab. Code, § 1410 et seq.) enacted in 1959 and recodified and included in FEHA in 1980 (Stat. 1980, ch. 992, § 4, p. 3140 et seq.) established that freedom from discrimination in employment on specific grounds, including disability, is a civil right and that such discrimination violates public policy. (See *Peralta Community College Dist. v. Fair Employment & Housing Com.* (1990) 52 Cal.3d 40, 44 [276 Cal.Rptr. 114, 801 P.2d 357]; *Dyna-Med, Inc. v. Fair*

*Employment & Housing Com.* (1987) 43 Cal.3d 1379 [241 Cal.Rptr. 67, 743 P.2d 1323].) In 1992 the Legislature amended FEHA to incorporate as part of state law the protections adopted by Congress in the federal ADA.[3]

As currently written FEHA prohibits as an unlawful employment practice, unless based upon a bona fide occupational qualification, the discharge of an employee because of the employee's physical disability (§ 12940, subd. (a)) except when the employee's disability renders the employee "unable to perform his or her essential duties[4] even with reasonable accommodations . . . ." (§ 12940, subd. (a)(1); see *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1160 [77 Cal.Rptr.2d 445, 959 P.2d 752] [FEHA recognizes the fact employer may have valid reasons to treat disabled employees differently from nondisabled employees if the disabled employee is unable to perform essential duties even with reasonable accommodation].) It is also unlawful, and separately actionable under FEHA, for an employer "to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee" unless the accommodation would cause "undue hardship" to the employer. (§ 12940, subd. (m); see *Spitzer v. Good Guys, Inc.* (2000) 80 Cal.App.4th 1376, 1383 [96 Cal.Rptr.2d 236] (*Spitzer*).)

Generally, " '[t]he employee bears the burden of giving the employer notice of the disability. [Citation.] This notice then triggers the employer's burden to take "positive steps" to accommodate the employee's limitations. . . . [¶] . . . The employee, of course, retains a duty to cooperate with the employer's efforts by explaining [his or] her disability and qualifications. [Citation.] Reasonable accommodation thus envisions an exchange between employer and employee where each seeks and shares information to achieve the best match between the employer's capabilities and available positions.' [Citation.]" (*Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 950 [62 Cal.Rptr.2d 142].)

FEHA does not obligate an employer to choose the best accommodation or the specific accommodation a disabled employee or applicant seeks. (*Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 228 [87 Cal.Rptr.2d 487].) It requires only that the accommodation chosen be "reasonable." (§ 12940, subds. (a) & (m).) Although FEHA does not define what constitutes "reasonable accommodation" in every instance, examples provided in the

---

[3] The Legislature declared its intent "to strengthen California law in areas where it is weaker than the Americans with Disabilities Act of 1990 (Public Law 101-336) and to retain California law when it provides more protection for individuals with disabilities than the Americans with Disabilities Act of 1990." (Stats. 1992, ch. 913, § 1, p. 4282.)

[4] "Essential duties" means the "fundamental job duties of the employment position the individual with a disability holds or desires." (§ 12926, subd. (f).)

statute itself and the regulations governing its implementation include job restructuring, part-time or modified work schedules or "reassignment to a vacant position." (§ 12926, subd. (n)(2); Cal. Code Regs., tit. 2, § 7293.9, subd. (a)(2); see also *Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 266 [102 Cal.Rptr.2d 55] (*Jensen*).)

If the employee cannot be accommodated in his or her existing position and the requested accommodation is reassignment, an employer must make affirmative efforts to determine whether a position is available. (*Spitzer, supra,* 80 Cal.App.4th at p. 1389.) A reassignment, however, is not required if "there is no vacant position for which the employee is qualified." (*Ibid.*; see *School Bd. of Nassau County v. Arline* (1987) 480 U.S. 273, 289, fn. 19 [94 L.Ed.2d 307, 107 S.Ct. 1123] ["Employers have an affirmative obligation to make a reasonable accommodation for a handicapped employee. Although they are not required to find another job for an employee who is not qualified for the job he or she was doing, they cannot deny an employee alternative employment opportunities reasonably available under the employer's existing policies. [Citations.]"].) "The responsibility to reassign a disabled employee who cannot otherwise be accommodated does 'not require creating a new job, moving another employee, promoting the disabled employee or violating another employee's rights . . . .' " (*Spitzer*, at p. 1389; see also *McCullah v. Southern Cal. Gas Co.* (2000) 82 Cal.App.4th 495, 501 [98 Cal.Rptr.2d 208] (*McCullah*) ["The employer is not required to create new positions or 'bump' other employees to accommodate the disabled employee."].) "What is required is the '*duty* to reassign a disabled employee if an already funded, vacant position *at the same level* exists.' [Citations.]" (*Hastings v. Department of Corrections* (2003) 110 Cal.App.4th 963, 972 [2 Cal.Rptr.3d 329] (*Hastings*); see *Spitzer*, at p. 1389.)

3.  *Summary Judgment Was Proper Because FEHA Does Not Require an Employer to Convert a Temporary, Light-duty Accommodation into a Permanent Position*

There is no dispute Raine could perform the essential functions of the front-desk assignment, which he held for six years while attempting to recover from his injuries.[5] The question is not whether Raine was qualified for the position, but whether he was entitled as a reasonable accommodation to remain at the front-desk position permanently. The trial court ruled the City had no duty under FEHA to make Raine's temporary front-desk

---

[5] Although the City urges summary judgment was properly granted because it is undisputed Raine could not perform the essential functions of a patrol officer, when the accommodation sought is job reassignment, the relevant inquiry is whether the employee is qualified and able to perform the essential functions "of the position to which reassignment is sought, rather than the essential functions of the existing position." (*Jensen, supra,* 85 Cal.App.4th at p. 256.)

assignment permanent because that would, in effect, require the City to create a new sworn-officer position just for Raine, an obligation not imposed by FEHA's accommodation requirements. We agree.

Although California law is emphatic that an employer has no affirmative duty to create a new position to accommodate a disabled employee, no California court has yet addressed whether an employer is obligated under FEHA to make a temporary position available indefinitely once the employee's temporary disability becomes permanent. However, in an opinion interpreting FEHA's accommodation requirements, the Ninth Circuit held FEHA does not require an employer to transform a temporary accommodation into a permanent job assignment to accommodate a disabled employee. (*Watkins v. Ameripride Services* (9th Cir. 2004) 375 F.3d 821, 828 (*Watkins*).) In *Watkins* an employer temporarily accommodated an injured delivery truck driver by allowing him to make special deliveries that did not involve heavy lifting. When it became clear the employee's injuries were permanent and he would not be able to perform the essential functions of a delivery truck driver, the employer sought to accommodate the employee by transferring him to another position. Unsatisfied with that accommodation, the employee filed a lawsuit alleging, in part, that FEHA required the employer to make the temporary special-delivery assignment permanent. Relying on *McCullah, supra,* 82 Cal.App.4th at page 501, the Ninth Circuit held FEHA obligated the. employer to transfer the employee to an existing vacant position; it did not require the creation of a new position of "special delivery driver" to accommodate the employee's disability. (*Ibid.*)

Federal courts of appeals interpreting the ADA, upon which FEHA's accommodation requirements are modeled[6] have similarly held not only that an employer is not required to create light-duty positions for purposes of accommodating a disabled employee unable to perform the essential functions of the position for which he or she was hired, but also that an employer who has created such a temporary assignment has no duty to transform that accommodation into a permanent position once it is informed the employee's disability has become permanent. (*Watson v. Lithonia Lighting* (7th Cir. 2002) 304 F.3d 749, 752 (*Watson*); *Hoskins v. Oakland County Sheriff's Dept.* (6th Cir. 2000) 227 F.3d 719, 730–731 (*Hoskins*); *Malabarba v. Chicago Tribune Co.* (7th Cir. 1998) 149 F.3d 690, 696 (*Malabarba*); *Aldrich v. Boeing Co.* (10th Cir. 1998) 146 F.3d 1265, 1271, fn. 5; *Laurin v. Providence Hosp.* (1st Cir. 1998) 150 F.3d 52, 60 (*Laurin*); cf. *Shiring v. Runyon* (3d Cir. 1996) 90 F.3d 827 [reasonable accommodation requirements of federal

---

[6] Like FEHA, the ADA requires an employer, in the absence of undue hardship, to make "reasonable accommodation" for an employee or applicant with a known disability. (See 42 U.S.C. §§ 12111(8), (9) & 12112(a), (b)(5)(A).)

Rehabilitation Act applicable to federal employees did not require employer to make temporary light-duty position permanent for employee whose disability had become permanent].)

In *Hoskins, supra,* 227 F.3d 719, a deputy sheriff whose on-the-job injury limited her ability to restrain inmates in the county jail brought suit under the ADA alleging the Oakland County (Michigan) Sheriff's Department (OCSD) had a duty to accommodate her disability by reassigning her permanently to a position in one of the control booths, which did not require interaction with inmates. In its motion for summary judgment on the deputy's ADA claim for disability discrimination, the OCSD provided evidence the control booth position (for which the deputy was indisputably qualified) was reserved as a rotating position for all deputies. The OCSD argued that assigning the deputy to the temporary position on a permanent basis would undermine the rotating nature of the position and thus was an unreasonable accommodation as a matter of law. The Sixth Circuit agreed, holding the ADA did not require an employer to convert a temporary rotating position into a new, full-time position as an accommodation for an employee whose disability had become permanent: "Hoskins' request would essentially require the creation of a new position rather than reassignment to an otherwise existing vacant one. As we have made clear, an employer's duty to reassign an otherwise qualified disabled employee does not require that the employer create a new job in order to do so." (*Id.* at p. 730.)

Similarly, in *Watson, supra,* 304 F.3d 749, an assembly line worker suffered a shoulder injury that restricted her ability to perform assembly line work. Her employer assigned her temporarily to a series of light-duty tasks while she recovered from her injury. When informed by the worker's physician that her injury would never heal and she would never be able to perform assembly line work for which she had been hired, the employer discharged the worker. The district court granted summary judgment for the employer on the worker's ADA claim, which alleged the employer had a duty to accommodate her by allowing her to remain in the light-duty position. The Seventh Circuit affirmed, holding "[t]he ADA does not require an employer that sets aside a pool of positions for recovering employees to make those positions available indefinitely to an employee whose recovery has run its course without restoring that worker to her original healthy state. A person is 'otherwise qualified' within the meaning of the ADA only if she can perform one of the regular jobs (with or without an accommodation). Watson [the employee] cannot perform any assembly-line job . . . . [W]hat she wants is a different job, comprising a subset of the assembly line tasks . . . . [T]he ADA does not require employers to create new positions . . . ." (*Id.* at p. 752.)

The same reasoning has been utilized by every federal court of appeals that has considered the issue. (See, e.g., *Aldrich v. Boeing Co., supra,* 146 F.3d at

p. 1271, fn. 5 [employer "not required to create positions merely to accommodate" plaintiff's disability]; *Laurin, supra,* 150 F.3d at p. 60 [ADA did not require hospital to assign nurse with epilepsy to permanent day shift even though it had done so on temporary basis to assist her recuperation]; *Malabarba, supra,* 149 F.3d at p. 696 [acknowledging the "long-standing recognition that the ADA does not require that employers transform temporary work assignments into permanent positions."].) The result should be no different under the substantially identical provisions of FEHA. (See *Spitzer, supra,* 80 Cal.App.4th at p. 1384 ["Resort to federal case law is particularly appropriate in connection with the duty to make reasonable accommodation because the provisions of the state regulations defining 'reasonable accommodation' under the FEHA are virtually identical to language of the ADA reiterated in the regulations implementing that federal statute. [Citations.]"].)[7]

Like the ADA, FEHA does not require the employer to create a new position to accommodate an employee, at least when the employer does not regularly offer such assistance to disabled employees. (*McCullah, supra,* 82 Cal.App.4th at p. 501; *Hastings, supra,* 110 Cal.App.4th at p. 972; *Spitzer, supra,* 80 Cal.App.4th at p. 1389; see also *Watkins, supra,* 375 F.3d at p. 828.) Yet that is exactly what Raine seeks—to make his temporary assignment (albeit a long-term temporary assignment) permanent. The evidence was undisputed the front-desk position is used by BPD for officers recovering from injuries. The only persons working the front desk on a *permanent* basis are civilian police technicians, receiving less pay and fewer benefits than sworn police officers. Raine made clear he did not want the civilian position.

Raine nonetheless insists that, having made a prima facie showing he was a person with a qualifying disability and able to perform the essential duties of the position to which he sought permanent reassignment,[8] it is the City's burden to establish that converting Raine's temporary assignment into a

---

[7] Although the Legislature has declared that FEHA is intended to be independent of, and provide greater protection than, the ADA (see § 12926.1, subd. (a)), when, as here, provisions of the two acts are similarly worded, federal decisions interpreting the ADA are instructive in applying FEHA. (*Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 812–813 [111 Cal.Rptr.2d 87, 29 P.3d 175]; *Reno v. Baird* (1998) 18 Cal.4th 640, 647–648 [76 Cal.Rptr.2d 499, 957 P.2d 1333]; *Estes v. Monroe* (2004) 120 Cal.App.4th 1347, 1350 [16 Cal.Rptr.3d 616].)

[8] The question whether it is part of the plaintiff's prima facie case in a FEHA accommodation action to show he or she is capable of performing the essential duties of the position or the employer's burden to show the plaintiff could not perform the essential duties of the job even with reasonable accommodation is currently pending before the Supreme Court. (See *Green v. State of California* (2005) 132 Cal.App.4th 97 [33 Cal.Rptr.3d 254], review granted Nov. 16, 2005, S137770.) The answer to that question, however, is immaterial here because the evidence was undisputed Raine was unable to perform the essential duties of patrol officer and was able to perform the essential functions of the front-desk position.

permanent position would pose an undue hardship. Raine argues the City failed to meet this burden because it presented no evidence relating to the economic hardship the requested accommodation would impose. Indeed, having allowed him to occupy the front-desk position on a full-time basis for six years, according to Raine the City could not demonstrate the permanent accommodation would impose an undue hardship.[9]

■ The question presented, however, is not whether assigning Raine to the front desk on a permanent basis imposes an undue hardship, but whether the accommodation requested is reasonable and thus required in the first place. (See § 12940, subd. (m) [reasonable accommodation required unless the accommodation, even if reasonable, imposes undue hardship].) As we have explained, an employer has no duty (absent perhaps workplace precedent suggesting its reasonableness[10]) to accommodate a disabled employee by making a temporary accommodation permanent if doing so would require the employer to create a new position just for the employee. Raine was certainly entitled to a reasonable accommodation, which would have included job reassignment if a vacant position existed; the City, however, was not required to create a new position of front-desk officer—a position indisputably reserved for civilians on a permanent basis or as a temporary light-duty assignment for police officers. (See *McCullah, supra,* 82 Cal.App.4th at p. 501; *Spitzer, supra,* 80 Cal.App.4th at p. 1389; see also *Watkins, supra,* 375 F.3d at p. 828; *Hoskins, supra,* 227 F.3d at pp. 729–730; *Watson, supra,* 304 F.3d at p. 749.)[11]

Raine contends the accommodation sought is not the creation of a new job, but the restructuring of the existing front-desk position. (See § 12926, subd. (n)(2) [duty to accommodate may include "job restructuring"]; Cal. Code Regs., tit. 2, § 7293.9, subd. (a) [same]; see also *Spitzer, supra,* 80 Cal.App.4th at p. 1383 [employer "restructured" sales job by permitting

---

[9] " 'Undue hardship' means an action requiring significant difficulty or expense" when considered in light of the nature and cost of the accommodation, the employer's size, budget, number of employees, overall financial resources and the structure and composition of the workforce. (§ 12926, subd. (s); Cal. Code Regs., tit. 2, § 7293.9, subd. (b).)

[10] See *Prilliman v. United Air Lines, Inc., supra,* 53 Cal.App.4th at pages 950–951 ("[A]n employer who knows of the disability of an employee has an affirmative duty to make known to the employee other suitable job opportunities with the employer and to determine whether the employee is interested in, and qualified for, those positions, if the employer can do so without undue hardship or if the employer offers similar assistance or benefit to other disabled or nondisabled employees or has a policy of offering such assistance or benefit to any other employees. . . .").

[11] Although the question of reasonable accommodation is ordinarily a question of fact (*Bell v. Wells Fargo Bank* (1998) 62 Cal.App.4th 1382, 1389 [73 Cal.Rptr.2d 354]), · when the undisputed evidence leads to only one conclusion as to the reasonableness of the accommodation sought, summary judgment is proper. (See *Hanson v. Lucky Stores, Inc., supra,* 74 Cal.App.4th at pp. 225–229 & fn. 11.)

frequent breaks and the use of à chair on the sales floor].) However, Raine does not seek the restructuring of either his existing patrol officer position or the civilian front-desk position, but the *reclassification* of the front-desk position from a civilian position to a sworn-officer position—effectively, a new position that retains the benefits afforded to sworn officers but without the attendant essential functions of the sworn-officer position. The City was not required to reclassify (and thus substantially alter) the front-desk job to accommodate Raine. (See *Hastings, supra,* 110 Cal.App.4th at p. 977 [correctional officer who became disabled not entitled as an accommodation to reassignment to a position in a different civil service classification without complying with competitive examination requirements; to require the accommodation would compel either the reclassification of the position or the violation of rules requiring civil service employees seeking assignment to different classifications to take competitive examination].)[12]

· Raine insists his efforts to remain employed with BPD by staffing the front desk rather than taking disability retirement are not only laudable, but also entirely consistent with FEHA's overall purpose of encouraging and enabling disabled employees to continue working. The City correctly observes that employers who create light-duty or temporary positions for the purpose of accommodating temporarily disabled employees will be dissuaded from doing so if they·can be forced to maintain those newly created light-duty positions indefinitely. (See, e.g., *Watson, supra,* 304 F.3d at p. 752 [such a "position, if adopted, thus would . . . diminish the employer's ability to accommodate employees who have transient conditions."].) As a matter of policy, both parties' positions have merit. Nonetheless, the evidence was undisputed there was no vacant position to accommodate Raine and the accommodation actually sought would have required the creation of a new sworn-officer position of "front-desk officer." Raine was not entitled under FEHA to have his temporary position made permanent.[13]

---

[12] The City asserted at oral argument that it was not obligated to reassign Raine permanently to the front-desk position because it would necessitate the termination of a civilian front-desk technician. (See *McCullah, supra,* 82 Cal.App.4th at p. 501 [employer is not required to " 'bump' other employees to accommodate" the disabled employee]; *Spitzer, supra,* 80 Cal.App.4th at p. 1389 [the duty to reassign a disabled employee who cannot otherwise be accommodated does not require " 'moving another employee . . . or violating another employee's rights . . . .' "].) However, there is no evidence in the record to support the City's contention.

[13] Although there appears to be a factual dispute whether the City has a policy of never accommodating sworn police officers whose injuries have become permanent, that dispute, while perhaps relevant to motive, is immaterial here because the evidence was undisputed there were no existing vacant positions for which Raine was qualified.

## DISPOSITION

The judgment is affirmed. Respondents are to recover their costs on appeal.

Johnson, J., and Woods, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 12, 2006, S140411. Werdegar, J., did not participate therein.