Filed 5/16/16  Dushman v. Southern Cal. Gas Co. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| BRIAN DUSHMAN, Plaintiff and Appellant, v. SOUTHERN CALIFORNIA GAS COMPANY, Defendant and Respondent. | B256291 (Los Angeles County Super. Ct. No. BC501790) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joseph R. Kalin, Judge.  Affirmed.

Schwartz Law and Jeffrey M. Schwartz for Plaintiff and Appellant.

Zuber Lawler & Del Duca and Jeremy J. Gray for Defendant and Respondent.

_____

## INTRODUCTION

Brian Dushman sued Southern California Gas Company (SoCalGas) for disability discrimination in violation of the Fair Employment and Housing Act (FEHA; Gov. Code, §12940). The trial court granted summary judgment in favor of SoCalGas. Dushman contends that the trial court's ruling was improper because SoCalGas had not negated an element of his causes of action, and because triable issues of material fact remain. We affirm.

## FACTUAL BACKGROUND

On April 26, 2011, Dushman completed an online application for part-time employment with SoCalGas and was hired as a part-time meter reader the next month.[1] Meter readers are required to read utility meters in their assigned areas, which entails several miles of walking each day. Dushman worked as a meter reader for approximately eight months in total.

On February 29, 2012, Dushman approached a meter on his route and observed a dog in the area. Upon leaving, he walked backwards to keep his eye on the dog and tripped over a decorative rock on the property, breaking his leg. He had surgery on his leg and spent several months in a rehabilitation facility until he was discharged in July 2012. Following his discharge, he continued with his rehabilitation at home and did not report to work. As a part-time employee, Dushman did not qualify for any type of leave, including leave under the Family and Medical Leave Act (FMLA; 29 U.S.C. § 2601 et seq.) or the California Family Rights Act (CFRA; Gov. Code, § 12945.2).

---

[1] The online application contained some incorrect information about Dushman's employment history. Because SoCalGas was unaware the information was incorrect when it terminated Dushman, it cannot rely on this after-acquired evidence as a complete defense to the FEHA claims. (See *Salas v. Sierra Chemical Co.* (2014) 59 Cal.4th 407, 431 [stating that after-acquired evidence may limit "the remedies available to plaintiff employee"]). We therefore do not consider this evidence in reviewing the propriety of granting summary judgment.

2

On August 16, 2012, Jeffery Bellers, a SoCalGas employee, contacted Dushman after learning that he had been discharged from the rehabilitation facility. Bellers called Dushman "to commence the interactive process to determine if [Dushman] could return to work and/or whether he required any additional accommodations." Dushman said his doctor had not yet cleared him to return to work. He told Bellers that he had filed a workers' compensation lawsuit and directed him to speak with his attorney. After Bellers explained that he was not calling about the lawsuit, Dushman responded that he was not able to work and did not have a return date.

On August 23, 2012, Bellers wrote a letter to Dushman following up on their conversation. He stated that he had called a week earlier to "discuss . . . options that might help [Dushman] return to active work status," but that Dushman was "unwilling to discuss anything with [him] in light of the fact that [Dushman had] a workers' compensation claim." Bellers noted that Dushman had told him that he could not perform the essential functions of his job and did not provide any information about when he would be able to return to work. He added: "[B]ecause you refused to discuss your current work status, I can only assume you either are not interested or do not qualify for any other available positions . . . ." Bellers invited Dushman to call if he was interested in discussing his work status and indicated that his failure to respond would be taken as a lack of interest.

On August 30, 2012, Dushman's workers' compensation attorney informed Bellers that Dushman could not yet return to work and was scheduled to be reexamined by his doctor on October 1. Dushman called Bellers the next day, on August 31, and told him that he could never return to work as a meter reader because of the walking requirements, and that he had to work close to home in Canoga Park because he still was unable to drive. Bellers asked if Dushman had applied for other jobs with defendant. Dushman said he had not, but he had taken a typing and clerical test before his injury when he considered transferring to a different position within the company. He typed 43 words per minute on the typing test; and scored outside the top tier on the clerical test (which measured performance in grammar, punctuation, and reading). Dushman asked if

3

there were any jobs available near his home or at the downtown office. Bellers said he would see if there were any available part-time jobs within Dushman's skill set.[2]

Over the next several days, Bellers researched whether the company had any available jobs for which Dushman was potentially qualified. There were no open clerical positions that required a typing speed below 50 words per minute. Bellers did learn of a few open cashier jobs, though they were located in Lancaster, Crenshaw, and Ontario. A cashier for SoCalGas provides an array of customer service, including processing payments and resolving billing issues.

On September 14, 2012, Bellers spoke to Dushman about the results of his research, including open cashier positions. Dushman expressed concern about working in any of these three locations because he was unable to drive long distances. He asked for a couple of days to make his decision. Bellers requested an answer by September 17, but then extended the date. Over the next few days, Bellers, Dushman, and Dushman's attorney continued to discuss efforts to return Dushman to work. At one point, Dushman indicated he was interested in taking an available cashier position in Lancaster, but he was unable to pursue it because his doctor had not cleared him to work. Dushman was finally cleared to work on September 19, 2012.

On September 20, 2012, Bellers called Dushman to notify him that he had located cashier positions closer to Dushman's home. He offered Dushman the opportunity to interview for a job in Van Nuys or Glendale. The following day, Dushman interviewed with two supervisors, who conducted the interview according to the company's structured guidelines for the cashier position. The interview was conducted about 25 miles from Dushman's home. Dushman was nervous about the drive because it was the longest distance he had driven since his injury, and he remained nervous during the interview.

_____

[2]     Dushman asked for a week or two to decide whether he wished to be reassigned to another vacant position in the company, but Bellers told him he would have to decide by the following week. Although Bellers could have given Dushman more time, he believed he had had given Dushman sufficient time and wanted to move the process forward.

4

When interviewed, Dushman did not disclose that he had been fired from two cashier positions.

Dushman scored an 18.75 on the interview, below the minimum required score of 23 to qualify for a cashier position. Both interviewers concluded that Dushman displayed insufficient oral skills to work effectively as a cashier. It appeared to them that Dushman would be easily frustrated by difficult customers, would not be proactive in seeking to resolve customers' problems, and displayed little ability to exercise good judgment without supervision. They advised Dushman that he did not pass the interview and was not qualified for a cashier position.

On October 2, 2012, Bellers spoke with Dushman about the interview results and again confirmed that the injury to Dushman's leg prevented him from returning to work as a part-time meter reader with or without accommodation. He sent a letter to Dushman that summarized their previous conversations and concluded: "As you are aware, you have been off work since March 1, 2012 and do not qualify for FMLA/CFRA protected leave. Due to your inability to return to your former Part-time Meter Reader Transitional position, since you do not qualify for the Part-time Cashier 1 position, and since you are not qualified for any other available position, the Company is no longer able to accommodate your absence. Therefore, we have no alternative but to terminate your employment, effective Tuesday, October 02, 2012."[3]

### PROCEDURAL BACKGROUND

In his first amended complaint, Dushman alleges causes of action for:
(1) disability discrimination in violation of FEHA (Gov. Code, § 12940, subd. (a));

---

[3]     At his deposition, plaintiff claimed that his termination was discriminatory because he should have been given the cashier position outright, without an interview, in light of his disability. He stated: "I don't think I should have been given an interview for a cashier position. People who have interviews were generally not disabled. I think I should be just given a position because of the disability without jumping through hoops for an interview to get the position because there was an on-the-job injury." He also noted that Bellers never offered to allow him to reinterview for the cashier position or retake the typing test for the clerical position.

5

(2) failure to accommodate in violation of FEHA (*id*., § 12940, subd. (m)); (3) failure to engage in the interactive process under FEHA (*id*., § 12940, subd. (n)); (4) failure to take all reasonable steps necessary to prevent discrimination under FEHA (*id*., § 12940, subd. (k)); and (5) wrongful termination in violation of public policy.

SoCalGas moved for summary judgment. In opposition, Dushman disputed few facts. The few facts identified as "disputed" represented disagreements over the characterization or legal significance of the evidence. In granting the motion, the trial court found that Dushman's action had no merit based on the undisputed facts. Applying the burden-shifting analysis in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 [93 S.Ct. 1817, 36 L.Ed.2d 668], the court concluded that Dushman could not show discrimination. The court further concluded that Dushman could not establish his other claims. SoCalGas reasonably attempted to accommodate him during a good-faith interactive process, but he was not qualified to perform the essential functions of his old job or an available new job with or without reasonable accommodation.

## DISCUSSION

In moving for summary judgment, a defendant must show that the plaintiff cannot establish the elements of its claims or that there is a complete defense to those claims. (Code Civ. Proc., § 437c, subd. (p)(2).) A "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ." (*Id*., § 437c, subd. (c).) On appeal, we review the record de novo to determine whether summary judgment was properly granted. (*Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 813.) Based on our independent review, we agree with the trial court's conclusion that SoCalGas was entitled to summary judgment.

### A.   THE DISCRIMINATION CLAIM

For a disability discrimination claim, the plaintiff must make a prima facie showing that he was able to perform the essential duties of the job with or without reasonable accommodation, and yet his employer took an adverse employment action against him because of his disability. (*Wills v. Superior Court* (2011) 195 Cal.App.4th

6

143, 159.) If the plaintiff satisfies the showing, the burden shifts to the employer to provide a legitimate, nondiscriminatory explanation for its action. If the employer is able to do so, the burden shifts back to the plaintiff to establish intentional discrimination, which may be satisfied by showing that the employer's explanation is false (creating an inference of pretext). (*Id.* at pp. 159-160.)

On summary judgment, the burden-shifting scheme is modified to conform to the nature of the proceedings. The defendant bears the initial burden of either negating an element of the plaintiff's prima facie case or establishing a legitimate, nondiscriminatory reason for the employment decision. (*Wills v. Superior Court*, *supra*, 195 Cal.App.4th at p. 160.) Once the defendant satisfies either showing, the plaintiff "'must offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination.' [Citation.]" (*Ibid.*; accord, *Batarse v. Service Employees Internat. Union, Local 1000* (2012) 209 Cal.App.4th 820, 836-837.)[4]

Dushman does not dispute that he was unable to return to work as a part-time meter reader after his accident. He admitted that he advised SoCalGas "that the injury to his leg prevented him from ever returning to work as a meter reader because he could not walk the required distances." This admission defeats his claim for disability discrimination under Government Code section 12940 (section 12940), subdivision (a),

---

[4] Dushman complains that the trial court's order granting summary judgment neglected to spell out the parties' burdens or specify how defendant met its initial burden of negating an element of plaintiff's prima facie case or establishing a legitimate, nondiscriminatory reason for terminating him. The trial court's analysis, however, applied the correct legal standard. The court concluded that SoCalGas had negated an element of Dushman's prima facie case—i.e., that he could perform the essential duties of the job with or without reasonable accommodation. It also found that defendant had a legitimate, nondiscriminatory reason for terminating Dushman, which was not shown to be pretextual. In any event, we review the trial court's order de novo and determine whether SoCalGas was entitled to summary judgment under the correct legal standard.

because Dushman conceded that he was unable to perform an essential function of his job as a meter reader with or without reasonable accommodation. (*Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 256 (*Jensen*).) Dushman nevertheless contends that SoCalGas "failed to affirmatively negate [his] assertion that he would have qualified for one of [the clerical or cashier] position[s] *with a reasonable accommodation* or would have qualified for another vacant position, had he been allowed to remain on disability leave." This contention, however, is relevant to his failure to accommodate claim under section 12940, subdivision (m), not to his discrimination claim under section 12940, subdivision (a). For a discrimination claim, Dushman must prove that he was able to perform the essential functions of the position for which he had been hired. (*Jensen*, *supra*, at p. 256; accord, *Furtado v. State Personnel Bd.* (2013) 212 Cal.App.4th 729, 744-745 (*Furtado*).) He admittedly could not do so with or without reasonable accommodation.

**B.    THE FAILURE TO ACCOMMODATE CLAIM**

Dushman next claims that a jury should decide whether SoCalGas is liable for failing to accommodate his physical disability. However, he did not raise any genuine issue of material fact in the trial court, and his arguments on appeal seek to impose obligations on SoCalGas that do not exist under the law.

1.    *No Genuine Issue of Material Fact*

To establish a claim for failure to accommodate, a plaintiff must show that "(1) the plaintiff has a disability covered by FEHA; (2) the plaintiff is a qualified individual; and (3) the employer failed to reasonably accommodate the plaintiff's disability. [Citation.]" (*Furtado, supra*, 212 Cal.App.4th at p. 744.) An important distinction between this claim and a discrimination claim is that "'the plaintiff proves he or she is a qualified individual by establishing that he or she can perform the essential functions of the position to which reassignment is sought, rather than the essential functions of the existing position. [Citations.]'" (*Id*. at pp. 744-745.)

"'[R]easonable accommodation'" under FEHA "means 'a modification or adjustment to the workplace that enables the employee to perform the essential functions

8

of the job held or desired.' [Citation.] "'Reasonable accommodation" may include either of the following: [¶] (1) Making existing facilities used by employees readily accessible to, and usable by, individuals with disabilities. [¶] (2) Job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.' ([Gov. Code,] § 12926, subd. (*o*); see Cal. Code Regs., tit. 2, § 7293.9, subd. (a) . . . .)" (*Furtado*, *supra*, 212 Cal.App.4th at p. 745, italics omitted.)

When an employee is unable to return to his or her existing job, the employer has an affirmative duty to determine if it has another available position for which the employee is qualified. (*Furtado*, *supra*, 212 Cal.App.4th at p. 745.) However, "'"[t]he responsibility to reassign a disabled employee . . . does 'not require creating a new job, moving another employee, promoting the disabled employee or violating another employee's rights . . . .'"' [Citations.] "What is required is the 'duty to reassign a disabled employee if an already funded, vacant position at the same level exists.' [Citations.]" [Citations.]' [Citations.]" (*Id*. at p. 745; see Gov. Code, § 12926, subd. (*o*).)

Here, the undisputed evidence showed that SoCalGas reasonably tried to accommodate Dushman's physical disability, but that he was not able to perform the essential functions of the only vacant position at the same level for which he was potentially qualified (i.e., a cashier position). SoCalGas granted Dushman a lengthy leave of absence, even though it was not required to do so under FMLA or CFRA. (*Jensen*, *supra*, 85 Cal.App.4th at p. 263 ["Holding a job open for a disabled employee who needs time to recuperate or heal is in itself a form of reasonable accommodation"].) SoCalGas then sought to reassign him when it learned that he could not return as a part-time meter reader. Bellers located two cashier positions that satisfied Dushman's requirement that he work close to home, and he elected to interview for one of them. His performance at the interview, as measured through a structured process by two

9

independent evaluators, demonstrated that he was not qualified to do the job. Therefore, SoCalGas reasonably accommodated Dushman's disability. (*Ibid*. [summary judgment appropriate when employer has no vacant position for which employee is qualified]; accord, *Furtado*, *supra*, 212 Cal.App.4th at pp. 744-745.)[5]

    2.      *Dushman's Numerous Challenges*

Dushman raises numerous arguments in support of his claim that SoCalGas failed to accommodate his disability. None has merit.

First, Dushman argues that, under *Jensen*, *supra*, 85 Cal.App.4th at page 262, SoCalGas gets no accommodation credit for allowing him to interview for the cashier position, a right he already had. However, the interview was merely to determine whether he was qualified for the position. Locating and placing him in an open position for which he was qualified would have been the reasonable accommodation. (*Ibid*.) Because Dushman was not qualified, he could not be accommodated.

Second, Dushman claims that SoCalGas was required, as a reasonable accommodation, to inform him that he could reinterview for the cashier position. He claims that he did not do well in the interview because he was nervous after driving on the freeway for the first time since his injury. But he does not cite any evidence that he made the interviewers aware of his nervousness or that he disclosed this information to Bellers after learning about the interview results. Nor does he point to any evidence that he requested to be re-interviewed. In these circumstances, Dushman cannot fault SoCalGas for failing to address an unknown issue. (See *Taylor v. Principal Financial Group, Inc.* (5th Circ. 1996) 93 F.3d 155, 165 [employer is not responsible for making

---

5      Dushman is correct that an employer must do more than offer to allow its employee to apply for any position for which he is qualified. (*Jensen*, *supra*, 85 Cal.App.4th at p. 262 [allowing an employee to exercise an existing right does not constitute reasonable accommodation]. He is also correct that the interactive process is a continuous one that extends beyond an employer's initial attempt if an employee requests further reasonable accommodation. (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1013). However, SoCalGas satisfied these standards based on the undisputed facts discussed above.

10

accommodations for limitations imposed by a disability that are "not open, obvious, and apparent to the employer"]; accord, *Scotch v. Art Institute of California*, *supra*, 173 Cal.App.4th at p. 1013 [employee is responsible for disclosing limitations imposed by a disability that are not obvious].)

Third, Dushman asserts that SoCalGas breached its obligation to reasonably accommodate his disability by failing to provide him with a temporary tutor or coach to help him improve his typing or cashiering skills so he could qualify for those positions. In support of his assertion, Dushman relies on an unpublished federal case that undercuts his position. In *Miller v. Santa Clara County Library* (9th Cir. 2001) 24 Fed.Appx. 762, a young man with Down's syndrome was terminated from a job training program for placement at a library "because he was having trouble staying on task and needed constant supervision." (*Id.* at p. 763.) The Ninth Circuit rejected his claim under the Americans with Disabilities Act (ADA), concluding that he was not a "'qualified individual'": "The record is clear that he cannot perform without a job coach at his elbow and that he does not have the basic, rudimentary knowledge required for library work. 'Reasonable accommodation' does not encompass within its meaning the use of an additional person to help the clearly unqualified who cannot perform on their own." (*Id.* at p. 765.)

Dushman argues that *Miller* is distinguishable because he needed only "a little *temporary* help" to be able to perform the job. This argument reads too much into *Miller* and the legal duty of accommodation. Neither requires an employer to provide a tutor or coach so that an employee may become qualified for a job he is unqualified to do for reasons other than his disability. (See *Raine v. City of Burbank* (2006) 135 Cal.App.4th 1215, 1223 [reassignment required only if employer has an available job that employee is qualified to do].) The clerical position required a typing speed that Dushman did not achieve;[6] the cashier position required a level of people and problem-solving skills that

_____

[6]     More significantly, there was no vacant part-time clerical position (as discussed in the text below).

11

Dushman did not demonstrate. Dushman has not cited any authority suggesting that SoCalGas was obligated to accommodate those non-disability related deficiencies. (*Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1457 [claim of error forfeited for failing to support argument with legal authority].)

Fourth, Dushman claims that SoCalGas should have allowed him to retake the typing test to see if he qualified for a clerical position. Dushman did submit evidence that he requested to retake the test, and we agree that he should have been given that opportunity as a matter of accommodation if there were an open part-time clerical position requiring a typing speed of 50 words per minute. But SoCalGas submitted evidence that the only open clerical positions were full-time, and that it would have violated SoCalGas's collective bargaining agreement to promote Dushman to a full-time clerical position. Dushman does not dispute this evidence, but argues that SoCalGas "failed to proffer any authority that going from a part-time to a full-time job is a promotion 'as a matter of law,'" and that "[SoCalGas] failed to provide its claimed 'collective bargaining agreement' or cite its terms."

SoCalGas did cite authority in its summary judgment motion for its position that it did not have to award a full-time job to a part-time employee. According to *Hastings v. Department of Corrections* (2003) 110 Cal.App.4th 963, 972-973, "The obligation to reassign a disabled employee who cannot otherwise be accommodated does 'not require creating a new job, moving another employee, promoting the disabled employee, or violating another employee's rights under a collective bargaining agreement.' [Citation.] What is required is the '*duty* to reassign a disabled employee if an already funded, vacant position *at the same level* exists.' [Citations.]" As Dushman acknowledges, a position is not at the same level if it entails greater pay or status. (*Id*. at p. 973.) A full-time position therefore cannot be said to be at "the same level" as a comparable part-time position. (See *ibid*.) Moreover, Bellers testified that reassigning Dushman to a full-time clerical position would have constituted a promotion in violation of the company's collective bargaining agreement. Dushman did not offer any evidence to contradict this testimony. Instead, he conclusorily asserts that this evidence must be disregarded because SoCalGas

12

did not produce the agreement itself. Dushman's unsupported and conclusory assertion is not enough to show error.[7] (*Multani v. Witkin & Neal*, *supra*, 215 Cal.App.4th at p. 1457 ["'[t]o demonstrate error, appellant must present meaningful legal analysis supported by citations to authority'"].)

Fifth, Dushman claims that he had the right to remain on disability leave until a suitable position became vacant, unless SoCalGas could prove that this would impose an undue hardship. In claiming this right, he cites *Sanchez v. Swissport, Inc.* (2013) 213 Cal.App.4th 1331. In that case, the plaintiff had taken leave because of a high-risk pregnancy requiring bedrest. After she exhausted the maximum, four-month leave under the Pregnancy Disability Leave Law (PDLL), she requested additional time off until she delivered her child. Her employer denied the request and terminated her, even though she would have been able to return to her existing job after giving birth. The question raised on appeal was "whether an employee who has exhausted all permissible leave available under the [PDLL] . . . may nevertheless state a cause of action under" FEHA for failure to grant a request for additional leave as a reasonable accommodation. (*Id.* at p. 1334.) The court concluded: "A finite leave of greater than four months may be a reasonable accommodation for a known disability under the FEHA." (*Id.* at p. 1341.)

*Sanchez* is readily distinguishable. The plaintiff there was able to return to her existing position once she delivered her baby, and she requested additional time as an accommodation to enable her to do so. In contrast, Dushman could not return to his job as a meter reader and made no request for additional leave. In fact, he admitted that he could never return to his position with or without accommodation. *Sanchez* did not hold that an employer in this situation, absent a showing of hardship, must extend leave until a new position opens up for which the employee may be qualified. SoCalGas already had

---

[7] The only authority cited, *Jensen*, *supra*, 85 Cal.App.4th at page 267, does not address the issue whether an employer must "provide its claimed 'collective bargaining agreement' or cite its terms."

granted Dushman seven months of leave, and he has not shown that the company was required to grant him additional, unrequested time.

## C. THE INTERACTIVE PROCESS CLAIM

Dushman contends a triable issue of fact remains as to whether defendant engaged in the interactive process in good faith.

Under FEHA, an employer must engage in an interactive process with an employee with a disability "to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by [such] an employee." (§ 12940, subd. (n).) The process is a two-way street, obligating both the employer and employee to communicate openly and fairly to identify an accommodation that will allow the employee to perform the essential functions of the job. (*Jensen*, *supra*, 85 Cal.App.4th 245.) An employer will be liable under section 12940, subdivision (n), only if it is responsible for the breakdown in communication. (*Ibid.*) "'[A]n employer cannot prevail at the summary judgment stage if there is a genuine dispute as to whether the employer engaged in good faith in the interactive process.' [Citation.]" (*Id.* at p. 261.)

Here, SoCalGas gave Dushman several months of leave while he was recovering from his leg injury. Bellers waited until Dushman was discharged from the rehabilitation facility before contacting him about his work status. Dushman appeared reluctant to discuss his work status because of his workers' compensation claim. Once Dushman engaged in the process, Bellers learned that Dushman was unable to return to his former position. In response, Bellers sought to identify other positions in the company for which Dushman might be qualified. Upon learning that Dushman might be qualified to work as a cashier, Bellers searched for open cashier positions. When Bellers located open positions, Dushman responded that they were too far from his home. Bellers continued to search, located two cashier positions closer to Dushman's home, and arranged an interview for Dushman at his chosen site. Thus, SoCalGas communicated with Dushman and explored possible accommodations that would allow him to perform a job for which he was qualified. (*Jensen*, *supra*, 85 Cal.App.4th at p. 261.)

14

Dushman claims, however, that he demonstrated that SoCalGas acted in bad faith in several ways, none of which individually or collectively raises a genuine issue of material fact. First, he claims that SoCalGas "rushed [him] to make decisions" when Bellers gave him a deadline to discuss his work status and interest in pursuing other available jobs. Dushman has not shown that it was unreasonable for SoCalGas to give him four days to state whether he was interested in participating in the interactive process.[8] Second, Dushman argues that, in this early exchange with Bellers in August 2012, Bellers had an incorrect perception that Dushman was non-responsive. However, Dushman does not show that this "perception" interfered with the interactive process. Third, Dushman claims that he was not given enough time to prepare for his interview for the cashier position and that he was nervous about driving to the interview because of his leg injury. But he presented no evidence that he requested and was denied additional time to prepare for the interview or that he disclosed to Bellers that he had difficulty getting to the interview site. Fourth, Dushman contends that SoCalGas acted in bad faith by not allowing him to retake the typing test. As previously discussed, SoCalGas had no obligation to do so and had no open clerical positions at the same level. Fifth, Dushman argues that SoCalGas interfered with his relationship with his doctor by making demands of him before he was cleared to return to work. The demands, however, were to participate in the interactive process after he had been on leave for six months from a position to which he admittedly could not return. The demands were not that he start working before he was able to do so. And shortly after Dushman engaged in the interactive process, his doctor cleared him to work. Dushman does not indicate how this interfered with the doctor-patient relationship.

---

[8]     Dushman also notes that Bellers had the authority to give him "up to a year to choose a position to apply for." But Dushman has not shown that the deadlines imposed were unreasonable or insufficient to accommodate his disability.

15

**D.      THE REMAINING CLAIMS**

The two remaining claims—for failure to prevent discrimination (fourth cause of action) and wrongful termination in violation of public policy (fifth cause of action)—depend on the allegations asserted in the first three causes of action.  (*Scotch v. Art Institute of California*, *supra*, 173 Cal.App.4th at p. 1021 ["An actionable claim [for failure to prevent discrimination] is dependent on a claim of actual discrimination"]; *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1159 [claim for wrongful termination in violation of public policy "cannot be broader than the constitutional provision or statute on which it depends"].)  In view of our resolution of the first three causes of action, the two remaining claims likewise fail.

## DISPOSITION

The judgment is affirmed.  SoCalGas is to recover its costs on appeal.

BLUMENFELD, J.[*]

We concur:

PERLUSS, P. J.

ZELON, J.

---

[*]      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.