Filed 3/17/22  Shoemaker v. City of Los Angeles CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| JEFFREY SHOEMAKER,<br><br>            Appellant,<br><br>      v.<br><br>CITY OF LOS ANGELES,<br><br>            Respondent. | B302695<br><br>(Los Angeles County<br>Super. Ct. No. BC636983) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Monica Bachner, Judge.  Affirmed in part, and reversed in part.

McNicholas & McNicholas, LLP, Douglas D. Winter and Jeffrey R. Lamb, for Appellant.

Los Angeles City Attorney, Michael N. Feuer, City Attorney Kathleen A. Kenealy, Chief Deputy City Attorney, Scott Marcus, Chief, Civil Litigation Branch, Blithe S. Bock, Managing Assistant City Attorney, and Paul L. Winnemore, Deputy City Attorney, for Respondent.

—————————————

# INTRODUCTION

The Los Angeles Police Department (LAPD) offered one of its officers, who had injured his knee on the job, a choice of light-duty assignments while he rehabilitated but told him no position was available to accommodate his temporary disability at his current location. Informed by others that jobs were available at his location, which he preferred, the officer sued the City of Los Angeles for disability discrimination, retaliation, failure to reasonably accommodate and failure to engage in a good faith interactive process in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code,[1] § 12940 et seq.). The trial court granted the City's motion for summary judgment.

Because triable issues of material fact existed about whether the City violated its obligation to participate in the interactive process in good faith by misrepresenting the availability of light-duty assignments for which the officer was qualified, we reverse the order granting summary judgment. But we affirm the order granting summary adjudication of the remaining three causes of action.

# FACTUAL AND PROCEDURAL BACKGROUND

A.  *The Parties and the Previous Lawsuit*

Jeffrey Shoemaker had been a police officer with the LAPD since 2002 and held the title of Police Officer III. Starting in 2007, Shoemaker was assigned to the Training Division. The Training Division had three facilities: Ahmanson Recruit Training Center (ARTC), located near the Los Angeles Airport; Elysian Park,

---

[1]  Undesignated statutory references are to the Government Code.

located at the police academy near downtown Los Angeles; and the Edward Davis Training Facility (Davis), located in Granada Hills.

Shoemaker worked at the Davis facility from February 2007 to November 2015 as a firearms instructor. His job entailed teaching firearms use and tactics to recruits and in-service officers. He also performed other tasks, including serving as a classroom instructor, a range master and an armor, working in the tower, and completing all administrative tasks related to being a firearms instructor.

Shoemaker injured his knee twice on the job, once in 2009 and again in 2011. As a result, Shoemaker had work restrictions, including needing to be seated for 75 percent of the time, but he still worked at Davis as a firearms instructor, performing all the tasks. In June 2011, Shoemaker had surgery on his knee. When his knee condition worsened, he told his supervisors he might require major surgery. Shoemaker alleged that his report of his disability led to adverse treatment in violation of FEHA. He sued the LAPD and the City, and they entered into a settlement agreement in 2015.

B.    *The Facts Underlying the Current Lawsuit*

Shoemaker had knee replacement surgery in April 2015 and was on medical leave. In June 2015, Shoemaker noticed his paycheck amount was decreasing. He thought this was due to paperwork not being submitted by LAPD's third-party administrator.

In July 2015, Shoemaker was admitted into the hospital, where he was visited by Sergeant Orpin, an LAPD wellness coordinator. Shoemaker explained that he felt mistreated again by the department.

3

In November 2015, Sergeant Orpin met with Shoemaker and explained that, because of his long time off, he would lose his state benefits, workers' compensation and medical benefits if he did not return to work in two weeks. They discussed the options available to Shoemaker, which included applying for a disability pension or working a light-duty position. Sergeant Orpin told Shoemaker that he could resolve his situation if he returned to work. Sergeant Orpin urged Shoemaker to ask his doctor for permission to work. Shoemaker wanted to return to Davis and resume his previous job. But Sergeant Orpin explained she needed to check with Captain Davalos, the commanding officer of the entire Training Division, about available positions.

Shoemaker went to his doctor and was given permission to work with temporary restrictions, requiring sedentary work only, with no climbing, bending, kneeling, squatting, running, jumping or standing for more than 30 minutes per hour. Sergeant Orpin spoke to Captain Davalos about Shoemaker.

Sergeant Orpin told Shoemaker that Captain Davalos said that there was no light-duty position available at Davis, that he was turning down officers trying to go to "firearms" with work restrictions, and that he could not accommodate Shoemaker. There were positions at ARTC and Elysian Park to accommodate Shoemaker. The two jobs offered Shoemaker the same rank, salary, benefits and number of work hours as his prior position at Davis. But Shoemaker was unhappy with both options because they would increase his commute time. ARTC was nearly two hours from his home, whereas Davis was only 15 minutes away. Shoemaker ultimately chose Elysian Park, which was still an hour from his home, increasing his commute by about 45 minutes.

Shoemaker began working in the career development unit at Elysian Park. That unit prepares officers for promotion exams,

and Shoemaker's tasks were all sedentary. Shoemaker was unhappy with the Elysian Park location because of its hilly environment, uneven terrain, and steep stairs to get to his office and the bathroom.

In 2016, because the LAPD's South Bureau experienced an increase in crime, the department deployed a mobile command post to the area. The Training Division, specifically Captain Davalos and Lieutenant Quan, were responsible for recruiting volunteers to staff the command post. Shoemaker told his supervisor that he could not volunteer because it would interfere with his job duties. But because the department was unable to recruit enough volunteers, individuals were ordered to staff the command post, including Shoemaker. The assignment changed Shoemaker's schedule, interfered with his childcare responsibilities, altered his days off, and required him to work on weekends and a holiday. The assignment lasted for less than 10 days and was consistent with Shoemaker's disability work restrictions.

Later that year, Shoemaker was temporarily assigned to assist the Los Angeles Police Memorial Foundation, a non-profit organization that raises money to support families of officers killed in the line of duty. Shoemaker was the only officer Captain Davalos assigned to this position in his 31-year career. Shoemaker objected to the assignment because he was busy preparing promotion candidates for their exams, and the assignment caused him to reschedule at least 16 interviews and find new officers to sit on the mock oral board.

C.    *Shoemaker's Complaint and the City's Motion for Summary Judgment or Summary Adjudication*

Shoemaker asserted four causes of action in his first amended complaint: failure to reasonably accommodate, failure to engage in a good faith interactive process, disability discrimination and retaliation, all violations of FEHA.

The City moved for summary judgment or, in the alternative, summary adjudication. The City argued that Shoemaker was not a qualified individual, that it provided a reasonable accommodation for Shoemaker and engaged in the interactive process in good faith, that Shoemaker did not suffer adverse employment action, and that it had legitimate, nondiscriminatory reasons for the actions it took.

Among other things, the City relied on Captain Davalos's declaration, in which he said, "I had asked various members of my staff to determine whether there were any light duty positions open at the Davis Facility, and I also asked my staff to determine what Officer Shoemaker's restrictions were. I wanted to make sure the Department did not violate the Officer's restrictions based on the available open positions . . . .  I was informed by my staff that there were currently no open positions at the Davis Facility for a light duty or administrative position."

Shoemaker opposed the motion, arguing there was a triable issue of fact on each claim. Specifically, Shoemaker asserted that he was a qualified individual, that there were open positions available at Davis to accommodate him, that the City did not engage in the interactive process in good faith, that he was subjected to adverse employment action, and that the City's proffered reasons were pretextual and retaliatory.

Shoemaker's evidence included his deposition, in which he testified that, before Captain Davalos said there was no light-duty

6

position available for Shoemaker at Davis, Shoemaker's former supervisor Sergeant Banry told Shoemaker the opposite. Specifically, Sergeant Banry said, "We need people on P.M. watch. We have a rangemaster [sic] position there. You can run the tower. You can run the tower on day watch. We'll find something for you to do. There's plenty for you to do." Sergeant Banry was familiar with Shoemaker's current work restrictions because they were like his restrictions when they worked together. Shoemaker also testified that, after Captain Davalos said there was no position for Shoemaker at Davis, Sergeant Hall told Shoemaker the supervisors at Davis had never been asked about open positions. Specifically, Shoemaker asked, "Hey, how come I'm getting kicked out of Davis?" And Sergeant Hall answered, "Hey, none of the supervisors here knew anything about it."

D.    *The Trial Court's Order*

After oral argument, the court granted summary judgment and, in the alternative, summary adjudication of each of the four causes of action. The court held there were no triable issues of fact on any of the causes of action. The court found that the City reasonably accommodated Shoemaker and engaged in the interactive process in good faith, and that Shoemaker had not suffered adverse employment action. The court did not reach the issue whether Shoemaker was a qualified individual.

## DISCUSSION

A.    *Summary Judgment, Summary Adjudication and Standard of Review*

Under Code of Civil Procedure, section 437c, a party may move for summary judgment to resolve an action or summary adjudication to resolve a claim: "The procedure by which to request a pretrial entry of judgment on the ground that there is no

7

dispute of material fact is summary judgment, or when the request is for a dispositive ruling on one of multiple claims within an action, summary adjudication." (*Weiss v. People ex rel. Department of Transportation* (2020) 9 Cal.5th 840, 864 (*Weiss*); Code Civ. Proc., § 437c.)

"'A court may grant a motion for summary judgment or summary adjudication "only when 'all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"'" (*Doe v. Lawndale Elementary School Dist.* (2021) 72 Cal.App.5th 113, 123.) "Courts deciding motions for summary judgment or summary adjudication may not weigh the evidence but must instead view it in the light most favorable to the opposing party and draw all reasonable inferences in favor of that party." (*Weiss, supra*, 9 Cal.5th at p. 864.)

We review an order on summary judgment or summary adjudication de novo to determine if there is a triable issue of material fact: "'"On appeal, the reviewing court makes '"an independent assessment of the correctness of the trial court's ruling [regarding summary adjudication or summary judgment], applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law."'" [Citation.] Our task is to determine whether a triable issue of material fact exists.'" (*McKenna v. Beesley* (2021) 67 Cal.App.5th 552, 565.)

As discussed below, summary adjudication was appropriate on three of Shoemaker's claims. But because we conclude summary adjudication was error on one of his claims, summary judgment was also error.

8

B.    *The Trial Court Erred in Granting Summary Judgment and Summary Adjudication of Shoemaker's Claim for Failure To Engage in a Good Faith Interactive Process*

1.    *Relevant law*

FEHA was enacted to "provide effective remedies that will eliminate . . . discriminatory practices." (§ 12920.)  It is the "public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of" protected classes.  (*Ibid.*)  Denying equal employment opportunities "foments domestic strife and unrest, deprives the state of the fullest utilization of its capacities for development and advancement, and substantially and adversely affects the interests of employees, employers, and the public in general."  (*Ibid.*)

Under section 12940, subdivision (n), it is unlawful for an employer to "fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition."

An interactive process helps determine what jobs are available for reasonable accommodation.  "[A]n employer must engage in a good faith interactive process with the disabled employee to explore the alternatives to accommodate the disability."  (*Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 379 (*Nealy*).)  To put it another way, "[a]n employer may claim there was no available reasonable accommodation.  But if it did not engage in a good faith interactive process, 'it cannot be known whether an alternative job would have been found.'"

(*Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 424-425.)

"Both employer and employee have the obligation 'to keep communications open' and neither has 'a right to obstruct the process.' [Citation.] 'Each party must participate in good faith, undertake reasonable efforts to communicate its concerns, and make available to the other information which is available, or more accessible, to one party. Liability hinges on the objective circumstances surrounding the parties' breakdown in communication, and responsibility for the breakdown lies with the party who fails to participate in good faith.'" (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1014 (*Scotch*); accord, *Swanson v. Morongo Unified School Dist.* (2014) 232 Cal.App.4th 954, 971-972.)

The elements for a cause of action for failure to engage in a good faith interactive process include: (1) the plaintiff was a qualified individual; (2) the plaintiff requested an accommodation for a disability or medical condition; (3) the plaintiff was willing to engage in an interactive process to determine effective reasonable accommodations; (4) the employer failed to engage in a timely, good faith, interactive process; and (5) a reasonable accommodation was available. (See *Nealy, supra,* 234 Cal.App.4th at p. 379; *Scotch, supra,* 173 Cal.App.4th at p. 1014; *Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 974, 981 (*Nadaf-Rahrov*); *Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 54.)

The only elements contested on appeal are whether Shoemaker was a qualified individual, whether a reasonable accommodation was available and whether the City failed to participate in an interactive process in good faith.

10

We conclude there was a triable issue of material fact for each of them.

2. *A triable issue of material fact existed about whether Shoemaker was a qualified individual*

"[A] qualified individual is someone who is able to perform the essential functions of his or her job, with or without reasonable accommodation." (*Nealy, supra,* 234 Cal.App.4th at p. 378.) A "plaintiff proves he or she is a qualified individual by establishing that he or she can perform the essential functions of the position to which reassignment is sought, rather than the essential functions of the existing position." (*Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 255-256; see also *Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 767 (*Cuiellette*); *Raine v. City of Burbank* (2006) 135 Cal.App.4th 1215, 1223, fn. 5 (*Raine*); *Hastings v. Department of Corrections* (2003) 110 Cal.App.4th 963, 972.)

Shoemaker presented evidence he could perform the essential functions of the position he sought—a firearms instructor. This evidence included his deposition testimony and declaration, where he said he had previously performed his job duties "as a primary or secondary instructor, an armor, range master, tower duties (running relays) and doing all of the administrative tasks associated with the firearms instructor assignment" while having work restrictions requiring him to be seated most of the time. Shoemaker said he "received outstanding performance reviews despite [his] restrictions." Shoemaker explained, "it's always been common practice" that if he was working on the range and needed to sit down, his supervisors would permit him to do so.

11

Our conclusion is consistent with *Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696 (*Atkins*).  In that case, five LAPD recruits were injured during their training at the police academy and terminated or constructively discharged.  (*Id.* at p. 704.)  We affirmed the jury's verdict in favor of the recruits as to liability.  And we held that even though the recruits failed to show they were qualified individuals because they could not perform the essential functions of a recruit, "reassignment to the Recycle program until plaintiffs recovered or became permanently disabled was not unreasonable under the facts of this case and that substantial evidence support[ed] the jury's verdict that plaintiffs were qualified for such an assignment."  (*Id.* at p. 729.)  Here, irrespective of whether Shoemaker could perform the essential functions of a police officer, assigning him temporarily as a firearms instructor was not unreasonable, and the evidence showed he was qualified for that assignment.

The City argues Shoemaker could not establish he was a qualified individual because he admitted he could not perform the essential functions of a police officer.  Shoemaker's job was that of Police Officer III, and it is undisputed a police officer's essential functions required "making forcible arrests, controlling suspects, and searching, transporting, and booking arrestees."

However, Shoemaker did not have to perform all these tasks to be a qualified individual for the City to accommodate his disability because the LAPD maintained permanent light-duty assignments for officers who could not perform all the essential functions of an officer.  (See *Cuiellette, supra,* 194 Cal.App.4th at p. 769 ["Because the LAPD maintained permanent light duty positions that it staffed with police officers who could not perform all of the essential duties of a police officer, the relevant inquiry is whether plaintiff was able to perform the essential duties of the

light duty assignment he was given on his return to work and not whether he was able to perform all of the essential duties of a police officer in general."]; see also *Cripe v. City of San Jose* (9th Cir. 2001) 261 F.3d 877, 888 ["in the case of San Jose police officers, there is a factual dispute as to whether it is 'inevitable' that investigators, or, for another example, training officers, will be called upon to make forcible arrests and whether, in the case of an emergency, it is actually necessary for *all* officers to be available for patrol duty"].)

The City's argument is inconsistent with its policy. The LAPD's manual stated, "Temporary modified duty assignments are <u>temporary</u> accommodations within the Department provided to employees who temporarily cannot perform the essential functions of their civil service position." The policy further provided, "No employee shall be given a temporary modified duty assignment when the medical evaluation or restrictions indicate that the employee is incapable of performing in a modified position." By definition, the temporary modified duty assignments were for individuals, like Shoemaker, who could not perform the essential functions of their civil service position.

In addition, the City's argument is inconsistent with its practice. The City, in essence, argues it can only assign an individual to be a firearms instructor if he or she can perform all the essential functions of a police officer. But that is not what the City did. In fact, the City previously assigned Shoemaker to be a firearms instructor when he had similar disability work restrictions and could not perform all the essential functions of an officer.

The City's reliance on *Raine, supra,* 135 Cal.App.4th at page 1215, is misplaced. In that case, a police officer sued the City of Burbank under FEHA for refusing to convert his temporary

13

light-duty assignment to a permanent assignment when his temporary disability became permanent.  (*Id.* at pp. 1218-1221.) The trial court granted summary judgment for the city.  (*Id.* at p. 1221.)  We affirmed and held "an employer has no duty (absent perhaps workplace precedent suggesting its reasonableness) to accommodate a disabled employee by making a temporary accommodation permanent if doing so would require the employer to create a new position just for the employee." (*Id.* at p. 1227, fn. omitted.)  Here, Shoemaker did not ask the City to create a new permanent position just for him.  Instead, he sought an available position at Davis to accommodate his temporary disability.

The City also argues Shoemaker could not perform the marginal functions of a firearms instructor based on allegations he made in his prior lawsuit against the City.  Specifically, Shoemaker alleged the job of primary range instructor was "physically demanding and would have violated every work restriction [he] had" because the position required teaching a class for two to four hours, twice a day, all while standing, and the position further required "constant maneuvering" including standing, pacing, and kneeling.  Shoemaker alleged being the secondary instructor was "also a physically demanding position."

Those allegations are insufficient to support summary judgment:  "Because the person against whom such evidentiary admissions are offered may explain the admission and thereby, in effect, controvert it or at least avoid being held to the fact apparently admitted, reliance by a moving party on evidentiary admissions generally precludes summary judgment." (*Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 457-458.)  Plus, those allegations appear to be from an unverified complaint.  But the contrary statements, in this case, were made under oath during Shoemaker's deposition.

14

### 3. *A triable issue of material fact existed about whether a reasonable accommodation was available*

"To prevail on a claim for failure to engage in the interactive process, the employee must identify a reasonable accommodation that would have been available at the time the interactive process occurred." (*Nealy, supra,* 234 Cal.App.4th at p. 379.)

Shoemaker presented evidence of a reasonable accommodation that was available—a firearms instructor position at Davis. In his deposition and declaration, Shoemaker explained that his former supervisor at Davis indicated those jobs were available and identified two open spots, that Shoemaker had previously done them with similar disability restrictions, and that he had received high performance reviews.

The City argues that Shoemaker failed to show a position at Davis was available to accommodate his disability requirements and that his evidence "stands in stark contrast" to the City's evidence.

As Shoemaker points out, by acknowledging contradictory evidence, the City implicitly concedes there was a dispute of material fact. Moreover, the evidence showed a reasonable accommodation was available at Davis for Shoemaker. Shoemaker's former supervisor at Davis said so and identified two specific firearm instructor positions: range master and running the tower. The supervisor was familiar with Shoemaker's disability restrictions because they had worked together when Shoemaker had similar restrictions.

The City also argues Shoemaker failed to request a reasonable accommodation because his essential functions are that of a Police Officer III, and he admits he cannot perform those tasks.

15

However, "'reasonable accommodation' in the FEHA means (as relevant here) a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired." (*Nadaf-Rahrov, supra,* 166 Cal.App.4th at p. 974.) Shoemaker could perform the essential functions of a firing instructor, the position he sought.

4. *A triable issue of material fact existed about whether the City participated in the interactive process in good faith*

Good faith participation requires that the employer and employee ""communicate directly, exchange essential information and [that] neither side can delay or obstruct the process."" (*Nadaf-Rahrov*, *supra*, 166 Cal.App.4th at pp. 984-985). It also requires that each party "undertake reasonable efforts to communicate its concerns, and make available to the other information which is available, or more accessible, to one party." (*Scotch, supra,* 173 Cal.App.4th at p. 1014.)

"Once the interactive process is initiated, the employer's obligation to engage in the process in good faith is continuous." (*Scotch, supra,* 173 Cal.App.4th at p. 1013.) "[T]he fact that an employer took some steps to work with an employee to identify reasonable accommodations does not absolve the employer of liability under section 12940(n)." (*Nadaf-Rahrov, supra,* 166 Cal.App.4th at p. 985.)

If an employer denies the availability of a position to accommodate an employee's disability when a position exists, the employer is not acting in good faith because the employer is exchanging false information and obstructing the process. (Cf. *Abed v. Western Dental Services, Inc.* (2018) 23 Cal.App.5th 726, 731, 741, 744 [holding a potential employer may be held liable under a FEHA failure to hire claim for "thwarting a pregnant

16

woman from applying for a job by falsely telling her no position is available"].)

Shoemaker presented evidence the City withheld information about a position to accommodate him at Davis. Captain Davalos had Sergeant Orpin tell Shoemaker there was no position for Shoemaker at Davis. But Shoemaker testified his former supervisor at Davis told him there were plenty of jobs for him, identifying two specifically. Shoemaker explained the supervisor was familiar with Shoemaker's similar prior disability work restrictions. Shoemaker also said Sergeant Hall indicated Captain Davalos and his staff never asked Sergeant Hall or other supervisors at Davis about open positions for Shoemaker.

The City argues it engaged in the interactive process in good faith. Specifically, Sergeant Orpin initiated the interactive process with Shoemaker, met him in person when he was admitted to the hospital and followed up with him in person and over the phone. They also met at Shoemaker's home to discuss his options, one of which was to return to work on a light-duty assignment. Sergeant Orpin urged Shoemaker to speak to his doctor for permission to work. Sergeant Orpin conveyed to Captain Davalos Shoemaker's disability work restrictions and request to return to a position at Davis. Although the City concluded no position for Shoemaker was available at Davis, positions were available at the two other training facilities, Elysian Park and ARTC. Both jobs were light-duty and able to accommodate Shoemaker's restrictions. Likewise, Shoemaker's two temporary assignments at the command post and the Memorial Foundation also accommodated his restrictions.

Even if the City engaged in the process in good faith at some point, Shoemaker's evidence that the City withheld information about a job he sought to accommodate his disability created a triable issue of material fact whether the City participated in good

17

faith throughout the entire process. "'[T]he employer's obligation to engage in the interactive process extends beyond the first attempt at accommodation and continues when the employee asks for a different accommodation.'" (*Scotch, supra,* Cal.App.4th at p. 1013.)

C.    *The Trial Court Properly Granted Summary Adjudication of Shoemaker's Claim for Failure To Provide a Reasonable Accommodation*

1.    *Relevant law*

Under section 12940, subdivision (m)(1), it is unlawful for an employer to "fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee."

There are three elements in a claim for failure to provide a reasonable accommodation: (1) the plaintiff has a FEHA-covered disability, (2) the plaintiff is a qualified individual, and (3) the employer failed to reasonably accommodate the plaintiff's disability. (See *Hernandez v. Rancho Santiago Community College District* (2018) 22 Cal.App.5th 1187, 1193-1194.)

The showing required for a qualified individual for a claim for failure to provide a reasonable accommodation "is identical to that required for a cause of action for failure to reasonably accommodate. That is, a qualified individual is someone who is able to perform the essential functions of his or her job, with or without reasonable accommodation." (*Nealy, supra,* 234 Cal.App.4th at p. 378.)

A reasonable accommodation is defined broadly and can include changes like "[j]ob restructuring, part-time or modified work schedules, [or] reassignment to a vacant position . . . ." (§ 12926, subd. (p)(2).) "If the employee cannot be accommodated in his or her existing position and the requested accommodation is

18

reassignment, an employer must make affirmative efforts to determine whether a position is available." (*Raine, supra,* 135 Cal.App.4th at p. 1223.)

The City concedes that Shoemaker had a FEHA-covered disability but argues Shoemaker was not a qualified individual and cannot show the City failed to provide reasonable accommodation.

As discussed, there was evidence Shoemaker was a qualified individual. But we conclude Shoemaker failed to establish a triable issue of material fact whether the City provided a reasonable accommodation.

2.     *No triable issue of material fact existed about whether the City reasonably accommodated Shoemaker's disability*

"FEHA does not obligate an employer to choose the best accommodation or the specific accommodation a disabled employee or applicant seeks. [Citation.] It requires only that the accommodation chosen be 'reasonable.'" (*Raine, supra,* 135 Cal.App.4th at p. 1222.)

Although Shoemaker provided evidence the City did not give him the accommodation he sought, he did not provide evidence the City's accommodation was unreasonable. The City offered Shoemaker two options for a lateral transfer within the training division to a light-duty assignment, one at Elysian Park and the other at ARTC. Both options provided the same rank, salary, benefits and hours of work that Shoemaker previously had at Davis. Shoemaker chose Elysian Park.

Shoemaker argues a triable issue of fact existed because there was evidence that positions were available for him at Davis, that the City did not ask Davis about jobs, that the LAPD's

19

accommodation policy was not followed, and that the City provided no evidence of undue hardship.

Shoemaker's evidence created a triable issue of fact about the City's good faith participation in the interactive process, but not about the City's reasonable accommodation. The City offered Shoemaker two options that reasonably accommodated his disability, one of which he accepted. Moreover, the City did not violate its policy by not returning Shoemaker to Davis. The City's policy provided: "The Chief of Police or his or her designee has the final decision regarding any temporary modified duty assignment, based on an employee's restrictions and the best interest of the Department." And "[a]ll employees seeking temporary accommodation may be subject to a different work location, schedule change, shift change, or a change of duties." Lastly, the City did not have to provide evidence of hardship because the City provided Shoemaker a reasonable accommodation. (See *Atkins, supra,* 8 Cal.App.5th at p. 721 ["""[A]n employer is relieved of the duty to reassign a disabled employee whose limitations cannot be reasonably accommodated in his or her current job only if reassignment would impose an 'undue hardship' on its operations.""].)

D.    *The Trial Court Properly Granted Summary Adjudication of Shoemaker's Claim for Disability Discrimination*

1.    *Relevant law*

Under section 12940, subdivision (a),[2] it is unlawful for an employer to discriminate against an employee because of a disability.

To establish a disability discrimination claim, a plaintiff must show he or she "(1) suffered from a disability, (2) was otherwise qualified to do his or her job, and (3) was subjected to adverse employment action because of the disability." (*Nealy, supra*, 234 Cal.App.4th at p. 378.)

To decide whether a plaintiff was a qualified individual "[i]n connection with a discrimination claim under section 12940, subdivision (a), the court considers whether [the] plaintiff could perform the essential functions of the job held—or for job applicants, the job desired—with or without reasonable accommodation." (*Atkins, supra,* 8 Cal.App.5th at p. 717.)  This is a different standard from the one applicable to claims for failure to reasonably accommodate and failure to engage in a good faith

---

[2]    Section 12940, subdivision (a), provides it is unlawful "[f]or an employer because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or veteran or military status of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

21

interactive process, where the question is whether the plaintiff can perform the essential functions of the position sought.  (*Ibid.*)

In determining whether an employer's acts constitute adverse action, it is appropriate to consider all the allegations collectively.  "[T]here is no requirement that an employer's retaliatory acts constitute one swift blow, rather than a series of subtle, yet damaging, injuries."  (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1056-1057 (*Yanowitz*).)

The City concedes Shoemaker had a disability.  The only issues on appeal are whether Shoemaker was a qualified individual and whether the City subjected him to adverse employment action.

Because we conclude Shoemaker failed to establish a triable issue of material fact whether the City subjected him to adverse employment action, we need not reach whether he was a qualified individual for his disability discrimination claim.

2.    *No triable issue of material fact existed about whether Shoemaker was subjected to adverse employment action*

"'In order to meet the FEHA standard, an employer's adverse treatment must "materially affect the terms, conditions, or privileges of employment."'"  (*Light v. Department of Parks & Recreation* (2017) 14 Cal.App.5th 75, 91-92.)  "A change that is merely contrary to the employee's interests or not to the employee's liking is insufficient."  (*Malais v. Los Angeles City Fire Dept.* (2007) 150 Cal.App.4th 350, 357.)

Even though Shoemaker offered evidence he did not like his reassignment, he did not offer evidence the City subjected him to adverse action.  All of Shoemaker's reassignments, including Elysian Park and the temporary assignments to the command post and the Memorial Foundation, accommodated his disability work

22

restrictions and provided the same rank, salary, benefits and number of hours of work that Shoemaker previously had at Davis.

Shoemaker argues that his transfer from Davis to Elysian Park increased his commute by 45 minutes and that Elysian Park had difficult terrain for an employee with a disability to navigate. Shoemaker also argues the two temporary assignments to the command post and the Memorial Foundation interfered with his job performance and schedule.

Shoemaker's arguments are unpersuasive. First, Shoemaker's reassignment to Elysian Park and temporary reassignment to the command post and the Memorial Foundation were lateral transfers because his salary and benefits remained the same. And a lateral transfer is not adverse action where there are no other materially adverse consequences: "'[A] plaintiff who is made to undertake or who is denied a lateral transfer—that is, one in which she suffers no diminution in pay or benefits—does not suffer an actionable injury unless there are some other materially adverse consequences . . . such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm. Mere idiosyncrasies of personal preference are not sufficient to state an injury.'" (*McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 393.) Second, the LAPD's policy for light-duty accommodations provided explicitly that, because of the temporary accommodation, the employee "may be subject to a different work location, schedule change, shift change, or a change of duties." And Elysian Park, the command post and the Memorial Foundation accommodated Shoemaker's temporary disability work restrictions. Third, nothing in the record shows the reassignments impacted his performance reviews or prospects for advancements.

23

E.    *The Trial Court Properly Granted Summary Adjudication of Shoemaker's Claim for Retaliation*

Under section 12940, subdivision (h), it is unlawful for an employer to "discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."

There are three elements in a retaliation claim: (1) the plaintiff was engaged in a protected activity, (2) the employer subjected the plaintiff to adverse employment action, and (3) there is a causal link between the protected activity and the adverse action. (*Moore v. Regents of University of California* (2016) 248 Cal.App.4th 216, 244 (*Moore*).)

The standard for determining whether an employee suffered adverse employment action in a retaliation claim is the same as in a disability discrimination claim. (*Yanowitz*, *supra*, 36 Cal.4th at pp. 1049-1051 ["we conclude that the term 'otherwise discriminate' in section 12940(h) should be interpreted to refer to and encompass the same forms of adverse employment activity that is actionable under section 12940(a)"]; *Moore*, *supra*, 248 Cal.App.4th at p. 244.)

The City concedes that Shoemaker was engaged in protected activity and that there was a causal link between the protected activity and the City's action. But the City again disputes that Shoemaker suffered adverse employment action.

As discussed, there was no evidence the City subjected Shoemaker to adverse employment action.

**DISPOSITION**

The judgment, order granting summary judgment and order granting summary adjudication of Shoemaker's claim for failure to engage in a good faith interactive process are reversed. The order granting summary adjudication of Shoemaker's claims for disability discrimination, retaliation and failure to reasonably accommodate is affirmed. The parties are to bear their own costs on appeal.


IBARRA, J.*

We concur:


PERLUSS, P. J.


SEGAL, J.

---

\*      Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

25